This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. A-1-CA-35091**

**CHELSEA COSTELLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith K. Nakamura, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1} Defendant Chelsea Costello appeals from the district court's judgment reversing the metropolitan court's suppression ruling in her favor. On appeal to this Court, Defendant challenges the district court's determination that the State could introduce her blood test results without the trial testimony of the blood-draw technician (phlebotomist) as violating her right to confrontation. Specifically, Defendant contends that the phlebotomist's testimony was required to establish her qualification to draw blood under NMSA 1978, Section 66-8-103 (1978), as well as her compliance with the State Laboratory Division (SLD) regulations for blood-draw procedures. We affirm the district court's decision.

**BACKGROUND**

{2} In the early morning hours of October 5, 2013, Officer Pedro Rico of the Albuquerque Police Department (APD) responded to the scene of a single-vehicle accident. When he arrived, Officer Rico found Defendant seated in the driver's seat of her Honda with the airbag deployed and the car against a light pole. Defendant, the lone occupant in the vehicle, had red, bloodshot, watery eyes and a strong odor of alcoholic beverages coming from her facial area. She admitted drinking one beer earlier in the evening.

{3} Officer Rico conducted a horizontal gaze nystagmus test at the scene but was unable to perform a field sobriety test on Defendant because she started to complain of chest and back pain. Defendant was transported to an emergency room by

2

ambulance. At the hospital, Officer Rico read Defendant her rights under the New Mexico Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), and Defendant agreed to a blood draw. A phlebotomist arrived at Officer Rico's request and drew Defendant's blood without incident. Officer Rico tagged the blood sample into evidence and left Defendant in the care of the hospital. He was subsequently notified that Defendant's blood alcohol content (BAC) was over the legal limit. On December 17, 2013, Officer Rico charged Defendant in the metropolitan court (trial court) with driving under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-102 (2010, amended 2016).

{4}     Prior to the start of the bench trial on July 14, 2014, defense counsel notified the trial court that Kathleen Wenzel, the State's witness from TriCore Reference Laboratories who had drawn Defendant's blood, was not present in the courtroom. On that basis, defense counsel orally moved to exclude Wenzel. The State responded that it could proceed without Wenzel's testimony because Officer Chavez, who witnessed the blood draw and was present to testify, could provide the necessary foundational testimony that Wenzel would have provided. After argument and additional briefing from the parties, the trial court entered an order of dismissal finding that the State was "unable to proceed on an impaired to the slightest degree theory." In suppressing the evidence, the court found that "the confrontation clause precluded a witness other than

the phlebotomist or other person who performed the blood draw complied with [Section] 66-8-103."

{5}     The State timely appealed the metropolitan court's decision to the district court pursuant to Rule 7-703(A) NMRA. The district court reversed, concluding that compliance with Section 66-8-103 is foundational and, thus, not subject to confrontation clause guarantees. Defendant timely appealed the district court's decision reversing the metropolitan court's suppression order.

**DISCUSSION**

{6}     Defendant argues that the trial court correctly ruled that she had a constitutional right to confront the phlebotomist who took the blood sample in this case. Citing *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny, Defendant contends that the district court erred in reversing the trial court's order and that she has a constitutional right to confront Wenzel concerning her qualifications to take a blood sample in accordance with the accuracy-ensuring regulations. We disagree.

{7}     "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo. Generally, we review admissibility of evidence . . . for an abuse of discretion." *State v. Gonzales*, 2012-NMCA-034, ¶ 5, 274 P.3d 151 (internal quotation marks and citation omitted).

{8}     The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

4

witnesses against him[.]" U.S. Const. amend. VI. *Crawford* signaled a fundamental shift in Confrontation Clause jurisprudence, concluding that an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. at 53-54. "[Statements] are testimonial when . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

{9}    Our courts have previously held that compliance with Section 66-8-103 relates to foundational matters that do not implicate the Confrontation Clause. In *State v. Dedman*, the state argued that a venipuncture method used to draw a blood sample was not a prerequisite to the admissibility of the blood alcohol report and that the unavailability of the nurse who drew the blood sample to testify at trial did not require the exclusion of the report on Sixth Amendment confrontation grounds. 2004-NMSC-037, ¶ 1, 136 N.M. 561, 102 P.3d 628, *overruled on other grounds by State v. Bullcoming*, 2010-NMSC-007, ¶¶ 1, 16, 147 N.M. 487, 226 P.3d 1 (*Bullcoming I*), *rev'd*, *Bullcoming v. New Mexico*, 564 U.S. 647, 668 (2011) (*Bullcoming II*). Our Supreme Court held that (1) the report was not testimonial and that (2) the testimony of the officer in whose presence the blood was drawn "provided sufficient foundation for [the] admission of the report and that [the] lack of opportunity to cross-examine

the nurse who drew the sample did not violate [the d]efendant's confrontation rights." *Dedman*, 2004-NMSC-037, ¶¶ 1, 30, 45. After *Dedman* was decided, the *Bullcoming I* Court, interpreting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), concluded that blood alcohol reports were in fact testimonial and overruled *Dedman*'s holding regarding that issue. *Bullcoming I*, 2010-NMSC-007, ¶¶ 13, 16. *Bullcoming I* did not consider any other holdings in *Dedman*, in particular, with regard to the issue of compliance with the blood sample collection regulatory requirement.

{10}　　Subsequently, in *State v. Nez*, 2010-NMCA-092, ¶ 1, 148 N.M. 914, 242 P.3d 481, this Court was asked on remand whether *Bullcoming I* changed our decision upholding the admission of a BAC based on the precedent set in *Dedman*. We concluded that it did not. In *Nez*, the defendant argued that because "the [s]tate did not present any non-hearsay testimony sufficient to establish the method used to draw blood and the qualifications of the blood drawer"—specifically that the state failed to lay the necessary foundation to show compliance with Section 66-8-103—the district court abused its discretion in admitting the report. *Nez*, 2010-NMCA-092, ¶ 12. After describing the testimony from a law enforcement officer about his personal observation of the nurse performing the defendant's blood draw, we said that the officer's testimony provided an adequate foundation for the blood draw and that the Confrontation Clause was not violated simply because the person who took the sample

6

did not testify, thus reaffirming our original pre-*Bullcoming I* analysis. *Id.* ¶¶ 13-14, 16.

{11}   Not long after the United States Supreme Court decided *Bullcoming II*, reversing our Supreme Court, we considered whether the Confrontation Clause requires that a defendant have an opportunity to cross-examine a witness regarding the underlying science and the accuracy of the Intoxilyzer 5000 breathalyzer machine (IR 5000). *State v. Anaya*, 2012-NMCA-094, ¶ 1, 287 P.3d 956. In *Anaya*, we concluded that "[n]othing in *Melendez-Diaz* and *Bullcoming* [*II*] requires the [s]tate to produce a witness and provide foundational testimony that the IR 5000 is scientifically accurate and reliable in measuring the alcohol level in a person's breath." *Anaya*, 2012-NMCA-094, ¶ 20. In other words, we said, these issues are non-testimonial because they are preliminary and foundational in nature, and "not all foundational evidence implicates the Confrontation Clause." *Id.* ¶¶ 21-22. Consequently, "the Confrontation Clause did not apply to the preliminary evidence regarding the scientific aspects for certifying the machine because the witness that the defendant demanded for cross-examination would present nothing more than preliminary factual evidence to establish a foundation for the admission of evidence to be used at trial." *Id.* ¶ 22 (alterations, internal quotation marks, and citation omitted). We see little basis for distinguishing this case from *Anaya*.

{12}  Here, the district court's decision is in line with *Dedman* and our decisions in *Nez* and *Anaya*. Importantly, nothing in either *Melendez-Diaz* or *Bullcoming II* overrules those cases or changes our conclusion. We hold that compliance with Section 66-8-103 is a foundational issue and that the blood-draw procedures and qualifications of the phlebotomist are non-testimonial facts that do not implicate the Confrontation Clause. Had Defendant wanted to challenge the phlebotomist's qualifications or the procedure she used to draw Defendant's blood, Defendant could have taken the necessary steps to introduce any evidence she believed was relevant, including issuing a subpoena to secure the presence of the phlebotomist at trial.

{13}  Defendant continues to argue—as she did below—that *Melendez-Diaz* and *Bullcoming II* compel a different result. We disagree. As a preliminary matter, Defendant makes no serious argument as to why these cases are controlling except to say that they are. It is true that in *Melendez-Diaz*, the United States Supreme Court held that a certificate stating the seized substance was cocaine falls within the "core class of testimonial statements." 557 U.S. at 308, 310. And it is also true that the *Bullcoming II* Court held that surrogate testimony of another analyst who did not take part in the analysis or observe the report, could not substitute for the testimony of the analyst who prepared the report. 564 U.S. at 661-63. However, neither of those holdings has any bearing in this case. As we explained above, unlike the testimonial

8

statements at issue in *Melendez-Diaz* and *Bullcoming II*, the evidence at issue here is foundational and, therefore, does not implicate the Confrontation Clause.

{14}    We note also that the New Mexico Legislature has established the procedures necessary to ensure the accuracy of breath and blood tests by enacting Section 66-8-103 (listing individuals authorized to draw blood), and by mandating that tests taken pursuant to the Implied Consent Act be approved by SLD. *See* § 66-8-107(A). As a result, the admissibility of blood test results turns on each particular test and the phlebotomist's compliance with existing statutes and regulations. These regulations clearly exist to ensure that the result of a blood draw conducted by a phlebotomist is accurate.

{15}    In determining whether compliance with statutory or SLD procedures implicates the Confrontation Clause, we have previously held that issues that are preliminary and foundational in nature are non-testimonial. *See State v. Granillo-Macias*, 2008-NMCA-021, ¶¶ 16, 22-23, 143 N.M. 455, 176 P.3d 1187. We explained in *Granillo-Macias* that preliminary factual evidence is non-testimonial because it bears an attenuated relationship to conviction and would require too much of an inferential leap to serve as testimonial evidence of a defendant's guilt. *See id.* ¶¶ 21-23. Thus, the Confrontation Clause did not apply to preliminary factual evidence to establish a foundation for the admission of evidence to be used at trial. *Id.* Our holding in *Granillo-Macias* is consistent with the United States Supreme Court's subsequent

holdings in *Melendez-Diaz* and *Bullcoming II. See Melendez-Diaz*, 557 U.S. at 312-13, 319-20, 322-24 (explaining that the Confrontation Clause only applies to facts regarding a defendant's guilt or innocence, not to ensure the reliability of every piece of evidence related to the defendant's trial); *see also Bullcoming II*, 564 U.S. at 669 (noting that a statement is testimonial if it has "a primary purpose of creating an out-of-court substitute for trial testimony" (internal quotation marks and citation omitted)). Consequently, contrary to Defendant's assertion, the phlebotomist's qualifications and compliance with statutory and regulatory standards are non-testimonial facts and do not implicate the Confrontation Clause.

{16}     As we have noted, the State offered available witnesses "relating to the blood drawer's identity, qualifications, and manner of drawing the blood." The State also said that if the trial court held that language in the certificate signed by Wenzel was testimonial, it could redact the certificate from the report. Because we have concluded that compliance with Section 66-8-103 and SLD regulations is foundational, the State may use hearsay evidence to establish these preliminary factual questions.

**CONCLUSION**

{17}     The district court's decision reversing the order of the Metropolitan Court is affirmed.

{18}     **IT IS SO ORDERED.**

10

                                _____

                                **LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**HENRY M. BOHNHOFF, Judge**

_____

**EMIL J. KIEHNE, Judge**